UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HARRY MAY, II,

              Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

              Defendant.
_____

**DECISION AND ORDER**
**No. 13-CV-06011(MAT)**

## INTRODUCTION

Plaintiff, Harry May, II ("Plaintiff" or "May"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied his application for Disability Insurance Benefits ("DIB").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On September 16, 2011, Plaintiff filed an application for DIB, alleging disability as of May 11, 2011, which was denied.  Administrative Transcript [T.] 110-114, 208-214, 252.  At Plaintiff's request, a hearing was held on May 10, 2012, via videoconference, and continued on August 8, 2012, before

administrative law judge ("ALJ") Edward I. Pitts, at which Plaintiff, who was represented by counsel, testified, as well his wife, and a vocational expert ("VE").  T. 27-67, 68-102.  On September 18, 2012, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period.  T. 10-19.

On November 14, 2012, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-4.  This action followed.

## FACTUAL BACKGROUND

### Relevant Medical Evidence Prior to May 11, 2011

In April 2010, Plaintiff underwent anterior cervical discectomy and fusion of C6-7 with bone grafts and a spinal plate. T. 333, 335-336.  Following the surgery, x-rays of Plaintiff's cervical spine showed normal alignment.  T. 339.  In May 2010, Plaintiff reported hoarseness following surgery, and was diagnosed with hoarseness secondary to paralysis of the left recurrent laryngeal nerve.  T. 349-351.  In November 2010 and January 2011, Plaintiff reported arm pain and numbness, and he was diagnosed with cervical radiculopathy.  T. 355-356, 357-358.

### Relevant Evidence from May 11, 2011 to September 18, 2012

On May 11, 2011, Plaintiff underwent cervical spine surgery by Craig T. Montgomery, M.D. due to cervical instability and pseudoarthrosis at the C5-6 and C6-7 levels.  T. 359-361, 442, 446-447.  At a post-operative follow-up in July 2011, Dr. Montgomery reported that Plaintiff was "doing very well" and had full strength

in all muscle groups, normal sensation in his upper and lower extremities and no gait disturbances. T. 369. He recommended that Plaintiff begin physical therapy ("PT") with neck exercises. T. 369. In September 2011, Dr. Montgomery noted that Plaintiff reported that he was making slow improvement with PT, but also noted that "we are concerned that the fusion has not taken 100% or that there could be a problem with the constructs." T. 368.

On September 27, 2011, Plaintiff underwent a CT scan of his abdomen and pelvis, which showed a fatty structure apposed to the left colon sigmoid junction with healed or resolving epiploic appendagitis. T. 397. Two days later, Subramaniam Sadhasivam, M.D. diagnosed abdominal pain and rectal bleeding, and reported that Plaintiff's CT scan of the abdomen showing sigmoid diverticulitis. T. 385. On November 17, 2011, Plaintiff underwent an upper GI series and small bowel follow-through, which rendered normal findings. T. 642. Later that same month, Plaintiff underwent a colonoscopy, which showed no visible signs of colitis, no polyps or neoplasms, no signs of diverticular disease, and colonic biopsy showed unremarkable colonic mucosa with benign lymphoid aggregate. T. 522-525.

On January 23, 2012, Dr. John Rominger performed a panendoscopy with biopsies in response to Plaintiff's complaints of nausea, vomiting, and weight loss. T. 490-491. Test results showed no signs of mass, ulceration or varices of the esophagus and stomach. Pathology reports showed that the duodenal mucosa showed

moderate chronic duodenitis, but were otherwise normal.  Tests were "significantly positive" for heliobacter microorganisms.  T. 520.

In May 2012, treating physician Greg J. Schultz, M.D. completed a questionnaire form.  T. 632-634.  Dr. Schultz assessed that Plaintiff had residual effects of failed cervical spine surgery and that he "requires complete freedom to rest frequently without restriction."  T. 632.  Dr. Schultz opined that Plaintiff could sit for less than six hours in an eight hour day and needed to alternate positions between sitting and standing.  T. 633.  He also opined that Plaintiff could not stand and/or walk for two hours in an eight-hour day and that he should not lift any weight.  Dr. Schultz assessed "mild" limitations in Plaintiff's concentration and "moderate" limitations in his ability to sustain work pace.  T. 633.  Dr. Schultz noted that he did not expect Plaintiff's medications to cause or worsen his fatigue.  T. 634.  In an addendum to the questionnaire form, Dr. Schultz opined that Plaintiff needed to rest more than 20% of the time and that he was likely to be absent from work more than two days per month.  Dr. Schultz assessed that Plaintiff could do "virtually" no reaching overhead with either arm, and that he could do all other reaching less than 10% of the day.  T. 638.

On July 20, 2012, Rod Noel, LCSW ("Noel") completed a Mental Questionnaire form covering the period June 9, 2012 to July 20, 2012.  T. 637.  Noel diagnosed depression, and opined that Plaintiff had "marked" to "extreme" limitations of his abilities to

perform work-related mental activities in the areas of concentration and persistence, interaction with others, and adaptation/stress. T. 635-636. According to Noel, Plaintiff's current medications caused fatigue, loss of memory and concentration issues. T. 637.

**Consultative Opinions**

On December 23, 2011, Plaintiff underwent a consultative physical examination with Sandra Boehlert, M.D., who diagnosed cervical spine fusion complicated by persistent right radicular pain, vocal cord scarring causing voice impairment, high cholesterol and blood pressure, and a history of cardiac arrhythmia. T. 402. Dr. Boehlert opined that Plaintiff had moderate to marked limitation with repetitive talking, moderate limitation with use of his right arm for overhead reaching or heavy pushing, pulling, or repetitive exertion, mild limitation to heavy ambulation and heavy exertion in the standing position, and moderate limitation to repetitive rotation of the cervical spine. T. 403.

Also on December 23, 2011, Plaintiff underwent a psychological examination with Seth Rigberg, Ph.D., who diagnosed adjustment disorder with mixed anxiety and depressed mood. T. 406. He opined that Plaintiff was able to follow and understand simple directions and instructions and perform simple tasks independently. He was able to maintain attention and concentration and maintain a regular schedule. He assessed that Plaintiff could relate adequately with

others and was able to appropriately become accustomed to changes in routine.   Dr. Rigberg noted that Plaintiff's reported limitations "are apparently more due to his medical condition and not due to psychiatric difficulties."  T. 406.

On January 9, 2012, State Agency psychological consultant A. Hochberg reviewed the evidence in the file and completed a psychiatric review technique form.  T. 408-421.  Dr. Hochberg opined that Plaintiff had "mild" restrictions of activities of daily living and maintaining social functioning and "moderate" restrictions in maintaining concentration, persistence or pace.  He reported that there was "insufficient evidence" with respect to the area of repeated episodes of decompensation each of extended duration.  T. 418.  Dr. Hochberg also completed a Mental Residual Functional Capacity Assessment Form (MRFC) on January 9, 2012 and assessed that Plaintiff was either "not significantly limited" or "moderately limited" in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  He reported that Plaintiff "alleg[es] depression and anxiety secondary to medical impairments."  T. 424.  He opined that Plaintiff could perform simple jobs.  T. 424.

**Relevant Hearing Testimony**

Plaintiff, who was age 47 at the time of the hearing, testified that he graduated from high school and had prior work as a furniture sales person, a liaison at a clutch and bearings manufacturer, a branch manager of a temporary services agency, a

security officer, a telephone sales person, an employment coordinator for the Steuben County Department of Social Services, and a human resources manager for a nursing facility.  T. 32, 33-39.  He testified that he is unable to work due to vocal cord problems, abdominal pain, difficulty sitting, standing and concentrating, minimal feeling in his right hand, neck, and shoulder, weight loss, and depression and anxiety.  T. 40-46, 50, 53, 56.

Plaintiff's wife, Trisha Lehr May, also testified.  T. 58-62.  Mrs. May testified that she has been married to Plaintiff since May 2011, and that she currently lives with him.  T. 58.  Mrs. May testified that, due to his voice problems, she "usually" is unable to understand him and has to remind him to speak up.  T. 58.  She testified further that, since his surgeries, Plaintiff "has a hard time concentrating on anything" and  "remembering things."  T. 59.  She also testified that Plaintiff "drops things all the time, he can't open things" and he trips often.  T. 59.  According to her, it takes Plaintiff a long time to do the dishes and "[h]e can't lift any of the things.  Any of the bigger dishes can't be done.  Stuff [is] left on the counter, so [she] still [has] to come home and . . . finish doing those types of things."  T. 59.  She testified further that she has observed Plaintiff taking rests during the day and that he is uncomfortable when sitting, as he fidgets or "has to have his heat on" for his shoulder and back.  T. 60.  Mrs. May also testified that Plaintiff "overall is

miserable" and cries a couple nights a week because he feels useless. T. 62. Finally, she testified that she has observed Plaintiff use the computer, but only for "minimal amounts of time" and then he has to put a heating pad on his back. T. 63.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous

legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims.  20 C.F.R. § 404.1520.

The ALJ in this case used the five-step sequential procedure to determine Plaintiff's eligibility for disability benefits.  The ALJ found that Plaintiff:  did not engage in substantial gainful activity from May 11, 2011 through September 18, 2012;  had the severe impairments of cervical spine degenerative disc disease post-fusion surgery with vocal cord scarring and adjustment disorder and the non-severe impairments of diverticulitis, hypertension, hyperlipidemia, arrythmia, asthma, right shoulder pain, bilateral hand pain, and abdominal pain, but that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments; had the residual functional capacity ("RFC") to perform a range of sedentary work; that Plaintiff was unable to perform his past relevant work; and that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including billing clerk, jewel stringer, and addresser.  T. 10-19. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period.  T. 19.

**(A)   The ALJ Properly Determined that Plaintiff's Abdominal Condition was Not Severe**

Plaintiff argues that the ALJ erred in failing to find his abdominal pain a severe impairment insofar as this condition "required two colonoscopy surgeries and multiple diagnostic tests, and resulted in functional impairments."  Pl's Mem at 17.

At step two of the sequential evaluation process, an ALJ must determine if a claimant has a medically determinable impairment and whether that impairment is "severe" such that it significantly limits the claimant's physical or mental ability to do basic work activities.  An impairment is "not severe" when medical and other evidence establish a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  <u>See</u> 20 C.F.R. § 416.921(a); SSR 96-3p, 1996 SSR LEXIS 10, at *3, 1996 WL 374181, at *1.

Here, the ALJ determined that Plaintiff's abdominal pain was a non-severe impairment because "no clear diagnosis has been rendered, and there is no indication of any functional limitation as a result of th[is] complaint[]." T. 13.

As the ALJ noted, the record contains references to Plaintiff's abdominal pain, and shows that Plaintiff made medical visits to his doctors complaining of same. Further, the record shows that Plaintiff underwent diagnostic testing for the pain. However, as the ALJ correctly pointed out, no clear diagnosis was ever rendered. T. 13, 383-386, 449-485, 486-501, 515-517, 537-548, 549-631. Moreover, aside from Plaintiff's own statements at his hearing that his abdominal pain may be causing related rectal bleeding and causing him to use the bathroom on an urgent/frequent basis, there is no evidence in the record that Plaintiff's abdominal pain resulted in any functional limitations. Notably, there is an absence of any doctor-assessed functional limitation caused by Plaintiff's abdominal pain. Accordingly, there is no evidence indicating that Plaintiff's abdominal pain would result in any work-related issues or that it would prevent him from performing work altogether. The Court finds the ALJ committed no legal error in determining that Plaintiff's abdominal pain was not a severe impairment since there was no medical evidence in the record that his abdominal pain resulted in functional limitations.

**(B)   The ALJ's RFC is Supported by Substantial Evidence**

**1.   The ALJ Properly Assessed the Treating Source Opinions in the Record**

Plaintiff argues that the ALJ failed to properly assess the medical opinions in the record, specifically the treating source opinions of Dr. Schultz and LCSW Noel.  Pl's Mem at 9.

The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and is not contradicted by substantial evidence in the record.  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2) (noting that treating physicians offer a "unique perspective to the medical evidence" that cannot otherwise be obtained from the record).  In order to override the opinion of the treating physician, an ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.  Burgess, 537 F.3d at 129.

In this case, the ALJ gave "little weight" to the medical source statement of treating physician Dr. Schultz, who assessed significant functional limitations.  Dr. Schultz opined that Plaintiff required freedom to rest frequently without restriction, that he could sit for less than six hours in an eight hour day and needed to alternate between sitting and standing, that he could not

stand and/or walk for two hours in an eight hour day, and that he should not lift any weight. T. 17, 632-633. As the ALJ explained, he reasonably discounted the "extreme limitations opined by Dr. Schultz" because they were "inconsistent with the other medical evaluations in the file[.]" T. 17. For instance, Dr. Schultz's "extreme limitations" were inconsistent with the generally normal/unremarkable physical findings assessed by consultative examiner Dr. Boehlert and treating surgeon Dr. Montgomery after Plaintiff's second surgery. T. 369-403. An ALJ is not required to accept the opinion of a treating physician where, as here, the treating physician issued opinions that are not consistent with the other substantial evidence in the record. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion[,] . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Moreover, it was also reasonable for the ALJ to discount Dr. Schultz's opinion because it "was not supported by the results of examinations actually performed by Dr. Schultz himself." T. 17. For example, on April 13, 2012, Dr. Schultz examined Plaintiff, reviewed Plaintiff's systems, and assessed that all of his systems were negative, with the exception of his GI system that showed abdominal pain and rectal bleeding. T. 552-554.

With respect to the July 2012 opinion of LCSW Noel that Plaintiff had "marked" and "extreme limitations" in his abilities to perform work-related mental activities, the ALJ afforded it "no weight" for several reasons.  T. 17, 635-636.  First, social workers, like Noel, are not acceptable medical sources.  20 C.F.R. §§ 416.902, 416.927(d).  "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."  SSR 06-3p, 2006 SSR LEXIS 5.  The ALJ has discretion to determine appropriate weight to accord opinions of other medical sources.  See Diaz v. Shalala, 59 F.3d 303, 313-314 (2d Cir. 1995).  Here, the ALJ reasonably discounted the opinion of social worker Noel altogether because, as the ALJ noted, he had only recently begun treating Plaintiff in June of 2012.  Further, as the ALJ noted, Noel's opinion was not supported by the other clinical notes in the record and was inconsistent with other psychological evaluations, including those of consultative examiner Dr. Rigberg and State Agency medical consultant Hochberg who assessed that Plaintiff's mental condition did not prevent him from performing all types of work.  T. 17, 404-407, 635-637.

Accordingly, the Court finds that the ALJ gave proper weight to the opinions of Dr. Schultz and LCSW Noel, and therefore his RFC is supported by substantial evidence.

### 2. The ALJ Properly Considered all of Plaintiff's Physical Limitations

Plaintiff contends that "the RFC defined by the ALJ failed to explicitly account for all impairments described by consultative examiner Sandra Boehlert, M.D.[,]" namely the "moderate limitations to use of [his] right arm for overhead reaching and repetitive exertion." Pl's Mem at 14. Additionally, he argues that "[t]he RFC also fails to accurately reflect Plaintiff's inability to look down[.]" Id.

Here, the ALJ determined that Plaintiff had the physical RFC to perform a range of sedentary work, including the ability:

> to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit without limitation; and stand/walk for up two hours in an eight-hour workday. He may remain at his workstation when changing positions. He is unable to communicate verbally more than occasionally. He can only occasionally use the right arm overhead for pushing and pulling, occasionally perform activities that require repetitive rotation of the neck, and never operate a motor vehicle.

T. 15.

Contrary to Plaintiff's contention, the ALJ's physical RFC assessment adequately takes into account Plaintiff's alleged pain and numbness in his neck and right shoulder, and is supported by the opinion of consultative examiner Dr. Boehlert. Dr. Boehlert opined that Plaintiff: had moderate to marked limitations with work requiring repetitive talking, _moderate limitation of use of his right arm for overhead reaching or heavy pushing, pulling, or repetitive exertion, mild limitation with heavy ambulation and_

*heavy exertion in the standing position, and moderate limitation to repetitive rotation of the cervical spine*.   T. 403 (emphasis added).   The opinions of consultative physicians can constitute substantial evidence where, as here, they are well-supported by clinical or laboratory findings or by other substantial evidence. See Diaz, 59 F.3d at 315;   see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (citations omitted).   As the ALJ explicitly stated, he "adopted the limitations reported by Dr. Boehlert" (T. 17) because her "opinion was rendered after a thorough examination and is consistent with examination findings and the claimant's reported activities of daily living." T. 17.

Specifically, Dr. Boehlert performed a consultative examination of Plaintiff on December 23, 2011 and reported that Plaintiff's gait was normal, he walked on his heels and toes without difficulty, he could squat fully, his stance was normal, he used no assistive devices, he needed no help changing for the examination or getting on and off the table, and he rose from a chair without difficulty.   She also reported that Plaintiff's skin, lymph nodes, head, face, eyes, ears, noes, throat, neck, chest, heart and lungs were normal, his hear exhibited regular rhythm, with no murmur, gallop, or rub.   There was no abnormality of the thoracic spine and his lumbar spine, elbows, forearms, wrists, hips, knees and ankles bilaterally exhibited full range of motion. Dr. Boehlert assessed that there were no evidence subluxations, contractures, ankylosis, or thickening, Plaintiff's joints were

stable and nontender, and there was no redness, heat, swelling or effusion of the joints. She noted that Plaintiff's deep tendon reflexes were physiologic and equal in the upper and lower extremities with no sensory deficits. Plaintiff's strength was assessed as normal at 5/5 in the upper and lower extremities and his extremities exhibited no cyanosis, clubbing or edema. She reported further that Plaintiff's pulses were physiologic and equal, there were no significant varicosities or trophic changes. Dr. Boehlert assessed no muscle atrophy and noted that Plaintiff's hand and finger dexterity was intact and his grip strength was normal at 5/5 bilaterally. T. 403. Dr. Boehlert's opinion was consistent with the other evidence in the record related to Plaintiff's physical condition, namely the evidence showing overall improvement in Plaintiff's pain, his extremity strength, and his range of motion post-surgery. T. 368-369. Her opinion is also consistent with Plaintiff's reported daily activities, including an ability to bathe himself, dress himself (including being able to put on a shirt), groom himself, cook and prepare food, clean, do laundry, and shop. T. 45, 406.

Accordingly, the Court finds that the ALJ properly considered all of Plaintiff's limitations in assessing Plaintiff's physical RFC and the RFC determination is supported by substantial evidence.

### 3. The ALJ Properly Accounted for Plaintiff's Mental Disorder

Plaintiff argues that while the ALJ found at step 3 of his sequential evaluation that Plaintiff's depression and anxiety resulted in "moderate limitation" in the functional area of concentration, persistence and pace, he failed to account for this functional limitation in his RFC determination. Pl's Mem at 18.

SSR 96-8p, 1996 SSR LEXIS 5 states, in part, that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than that made at step 3] by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." Id. Plaintiff correctly points out that courts have found that an ALJ may not avoid conducting the "detailed assessment" referenced in SSR 96-8p "by merely indicating that the claimant can perform simple, unskilled work" when making findings about a claimant's RFC. See Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1180-1181 (11th Cir. 2011) (holding that limiting claimant to simple, routine tasks or to unskilled work would not, standing alone, typically suffice to account for a claimant's moderate limitations in concentration, persistence, or pace) (other citations omitted); see also Thompson v. Astrue, No. 10-CV-6576 CJS, 2012 U.S. Dist. LEXIS 74854, 2012 WL 2175781, at *13 (W.D.N.Y. May 30, 2012) (remanding for further administrative proceedings where RFC limiting Plaintiff to unskilled work, without more, did

not adequately account for Plaintiff's concentration, persistence and pace limitations).  Here, however, it is clear that the ALJ gave consideration to the limitations he identified at step 3 when making his RFC determination, and that he factored in these limitations by finding that they did not affect Plaintiff's ability to perform unskilled or semi-skilled work.  T. 17.

Specifically, the ALJ thoroughly discussed the opinions of consultative psychologist Dr. Rigberg and State Agency medical consultant Dr. Hochberg.  T. 17.  As the ALJ explained, Dr. Rigberg performed a mental examination of Plaintiff and opined that Plaintiff: is able to follow and understand simple directions and instructions and perform simple tasks independently; is able to maintain attention and concentration for tasks and maintain a regular schedule; is able to learn new tasks and perform complex tasks independently; and is capable of making appropriate decisions, and can relate adequately with others.  T. 17, 404-407. The ALJ reasonably afforded this opinion "great weight" because it was "rendered after a thorough examination and is generally consistent with the claimant's reported activities of daily living and limited psychological treatment."  T. 17.  Dr. Rigberg's opinion was based on his examination of Plaintiff, in which he reported that Plaintiff was cooperate and his social skills were adequate, he was appropriately dressed and adequately groomed, his posture and motor behavior were normal, his eye contact was

appropriately focused, and his speech was fluent and clear with adequate expressive and receptive language skills.  Dr. Rigberg reported further that Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia, he was alert and fully oriented, his attention and concentration were intact, his recent and remote memory skills were intact, his cognitive functioning was average, his general fund of information was appropriate to experience, and his insight and judgment were good.  T. 406.  Additionally, Dr. Rigberg noted that Plaintiff reported that his limitations were primarily due to his medical condition and not due to his psychiatric problems.  T. 17, 406.

Likewise, State Agency consultant Hochberg reviewed the evidence in the record and concluded that the claimant can perform simple jobs.  T. 17.

The opinions of Drs. Rigberg and Hochberg were consistent with the other evidence in the record, which showed that Plaintiff was conservatively treated for his depression and anxiety and managed them with Xanax.  They were also consistent with treatment notes showing that while Plaintiff reported experiencing fatigue, loss of memory and concentration as a result of his mental conditions, he was still able to perform certain daily activities that required some concentration and focus, including watching the news on TV for

"maybe two or three hours" at a time, doing puzzles, and using a computer.  T. 14, 47-48.

As a final matter, there is no merit to Plaintiff's specific argument that, in assessing Plaintiff's RFC, the ALJ "failed to consider the side effects of Plaintiff's medication in combination with his anxiety/depressive disorder and limitations due to pain and decreased stamina . . . ."  Pl's Mem at 19.  Indeed, the Social Security Regulations provide that the RFC assessment must be based on all of the relevant evidence in the case record, including, for example, the side effects of medication.  SSR 96-8p, 1996 SSR LEXIS 5 (2009).  In this case, however, aside from LCSW Noel's opinion that Plaintiff's medications caused fatigue, loss of memory and concentration issues (T. 637) -- which the ALJ properly afforded no weight to for the reasons discussed above -- the only other evidence of side effects from Plaintiff's medications came from his own testimony at the hearing.  Plaintiff testified he was not able to drive a car "okay" because of "the amount of pain killers" he was taking, which prevented him from being "coherent."  T. 49.  He also testified that he takes Xanax for his anxiety, and Percocet, Neurontin, and Flexeril for pain.  According to him, his pain medications cause "extreme fatigue, lack of being able to concentrate and have memory."  T. 51.  Notably, the ALJ did, in fact, credit the portion of Plaintiff's testimony that he was unable to drive because of the side effects of his pain medication

insofar as the ALJ limited Plaintiff to work that does not require him to operate a motor vehicle.  T. 15.  However, as discussed in detail below, the ALJ reasonably discounted the remaining portion of Plaintiff's testimony with respect to the intensity, persistence, and limiting effects of his pain medications because this testimony was inconsistent with the other evidence in the record.

In sum, the Court finds that the ALJ's RFC determination is proper as a matter of law and is supported by substantial evidence.

### (C) **The ALJ Properly Assessed the Credibility of Plaintiff and of Mrs. May**

Plaintiff argues that, in assessing Plaintiff's RFC, the ALJ failed to properly assess his credibility and that of his wife. Pl's Mem at 20-24.

The ALJ's analysis at step four of the sequential analysis involves a two-part inquiry.  First, the ALJ must consider whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the pain or symptoms she alleges. Sarchese v. Barnhart, No. 01 Civ. 2172 (JG), 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002) (citing SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1529(b), 416.929(b).  Then, if the claimant makes statements about his symptoms that are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility and determine the extent to which his symptoms truly limit his ability to perform basic work

activities.  Sarchese, 2002 WL 1732802, at *7; SSR 96-7p, 1996 WL 374186, at *1.  A federal court must afford great deference to the ALJ's credibility finding so long as it is supported by substantial evidence.  Bischof v. Apfel, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); see also Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the ALJ's determination [as to claimant's credibility] because he heard [claimant's] testimony and observed [his] demeanor.").

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms "are not fully credible because they are unsupported by medical and other evidence, competent medical opinion, and testimony."  T. 16.  In support of his credibility assessment, the ALJ first noted that Plaintiff's complaints of debilitating pain and related symptoms were inconsistent with the objective evidence in the record.  The ALJ pointed out that Plaintiff reported being able to sit for only 10 minutes at a time, yet he sat through a 45-minute hearing without needing to change positions.  Further the ALJ noted that while Plaintiff reported slow improvement after his second surgery, post-operative records reflect that Plaintiff demonstrated full muscle strength in all muscle groups, normal sensation in the upper and lower extremities, and no gait disturbances.  T. 16, 366-382, 399-403.  The ALJ also

noted that diagnostic testing performed after Plaintiff's second surgery was either normal or revealed only mild findings.  T. 16, 399-403, 439-448.  Additionally, the ALJ noted that post-operative notes from Plaintiff's neurosurgeon show that Plaintiff's pain, parasthesias and overall upper extremity strength gradually improved.  T. 16, 436-438, 502-511.  The ALJ also pointed out that although Plaintiff speaks softly and would not be able to speak at length, he was able to make himself understood throughout the hearing.  The ALJ noted also that Plaintiff's ear, nose and throat specialist Dr. Tinsley reported that Plaintiff's vocal muscles were weak but would improve with usage.  T. 15, 344-353.

In assessing Plaintiff's credibility with respect to  his psychological symptoms, the ALJ also noted that Plaintiff's treatment for his mental conditions has been overall "limited and conservative."  The ALJ pointed out that Plaintiff is currently attending outpatient counseling (and only began same recently), he has never received any inpatient mental health treatment, and that his anxiety is well-controlled with Xanax medication.  T. 16, 404-407.

Finally, the ALJ acknowledged Plaintiff's "consistent work history," which "bolsters his credibility regarding motivation to work."  T. 16.  However, the ALJ pointed out that Plaintiff's allegations of disabling symptoms and limitations were at odds with

his reported daily activities, including performing personal grooming and household activities." T. 16, 404-407.

Plaintiff raises several challenges to the ALJ's credibility finding. First, he argues that the ALJ's finding that Plaintiff was able to sit through his administrative hearing "omits the salient qualification that Plaintiff was fidgeting in his chair and would have liked to ask if he could stand, but did not know if that was permitted." T. 53. Also, he argues that since the ALJ was able to observe Plaintiff by video-camera only, he was unable to observe the full extent of Plaintiff's fidgeting and discomfort, and was also unable to determine the extent of Plaintiff's vocal limitations insofar as there is "no way of knowing the amplification that was attached to the microphone of the Plaintiff" or how close it was to him. Pl's Mem at 20-22. While Plaintiff's contentions may indeed be valid, the ALJ nonetheless was able to observe Plaintiff over the course of two hearings, giving him ample opportunity to observe Plaintiff's physical demeanor and his appearance on both occasions. Based on his observations, the ALJ determined that Plaintiff's allegations of severe, debilitating pain were not credible. That determination is within the sole province of the ALJ as the trier of fact, and this Court has no authority to disrupt that finding unless it was patently unreasonable. Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997). The fact that the

ALJ conducted Plaintiff's hearing via videoconference -- at which a microphone was used to amplify Plaintiff's voice -- does not undermine the reasonableness of his credibility determination, and the Court is provided with no other basis to disturb the ALJ's credibility finding in this regard.

Plaintiff also argues that the ALJ erred in determining that Plaintiff was able to perform daily activities, which "are essentially the equivalent of the full range of sedentary work activities," without providing any additional explanation. Pl's Mem at 23 (citing T. 16). Courts have held that an ability to perform the "mundane tasks of life . . . do[es] not necessarily indicate that [a claimant] is able to perform a full day of sedentary work." Martin v. Astrue, 2009 U.S. Dist. LEXIS 66824, 2009 WL 2356118, at *12 (S.D.N.Y. July 30, 2009) (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (claimant who sometimes drives a car, attends church, and helps wife with shopping may still be unable to perform sedentary work)); see also Richardson v. Astrue, 2011 U.S. Dist. LEXIS 73429, 2011 WL 2671557, at *11 (S.D.N.Y. July 8, 2011) (collecting similar cases). Sedentary work is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In this case, although the ALJ did not explicitly state how Plaintiff's ability to perform certain daily activities equates to an ability to perform sedentary work, he thoroughly discussed Plaintiff's statements from the hearing and also those made throughout the record with respect to his ability to perform the tasks required of sedentary work, as that term is defined at 20 C.F.R. § 404.1567(a). For instance, he noted that Plaintiff reported that his pain was triggered by sitting, standing, and walking and that he is unable to lift, push, pull or drag objects as a result. T. 16, 273-280. The ALJ also noted that Plaintiff reported that due to his vocal impairments, he is unable to communicate for more than eight to ten minutes at a time. The ALJ noted further Plaintiff's complaints of depression and anxiety, which allegedly interfere with his ability to concentrate. T. 16. However, as the ALJ explained, these claims of disabling symptoms were belied by his reported daily activities throughout the record, which included performing a range of personal grooming and household activities -- i.e, bathing, dressing, and grooming himself, being able to cook, prepare food, clean, do laundry, shop, and manage money. Additionally, as the ALJ noted, Plaintiff also testified at his hearing that he was able to watch television for several hours at a time, work on puzzles, and use his computer, all of which required some degree of concentration and attention. Notably, as the ALJ pointed out in his decision, Plaintiff's

reported daily activities were consistent with and supported by the functional limitations assessed by Drs. Boehlert and Rigberg who assessed that Plaintiff's physical and mental impairments resulted in some functional limitations, but that they did not prevent him from performing all types of work.

Plaintiff also argues that the ALJ erred in failing to afford him "enhanced credibility" for his consistent work history.  Pl's Mem at 23-24.  "[A] good work history may be deemed probative of credibility." Schaal, 134 F.3d at 502.  Indeed, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).  However, a positive work history is "just one of many factors" that an ALJ should consider in assessing credibility. Schaal, 134 F.3d at 502.  Here, the ALJ acknowledged Plaintiff's "consistent work history," (T. 16) but provided numerous reasons for discounting Plaintiff's credibility overall, as previously discussed.  The fact that Plaintiff previously demonstrated a strong work ethic does not so significantly bolster his credibility as to overcome the other factors weighing against a finding that his testimony was entirely credible.

Finally, Plaintiff argues that the ALJ erred in discounting the observations opined by his wife, namely that he has difficulty being understood because his speech is low, that he frequently

drops items, has trouble concentrating and remembering things, cries regularly and expresses feelings of worthlessness, that he regularly changes positions when sitting, and takes naps throughout the day.  T. 16, 38-63.

As Plaintiff points out, SSR 06-03p, 2006 SSR LEXIS 5 requires all relevant evidence, including non-medical opinions, to be considered when evaluating a disability claim.  The ruling provides that when considering the testimony of a non-medical witness, it is "appropriate to consider such factors as the nature and extent of the [witness'] relationship [to the claimant], whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  In this case, the ALJ "duly considered" the "observations and opinions" of Plaintiff's wife, but ultimately afforded her opinion "little weight."  T. 17. Indeed, the ALJ, as trier of fact, was not bound to accept the statements of Plaintiff's wife.  It was within the ALJ's province to weigh the other evidence in the record, keeping in mind the interest and credibility of the witnesses, and ultimately determine the weight to be given to Plaintiff's wife's testimony.  See Spicer v. Califano, 461 F. Supp. 40, 47-48 (N.D.N.Y. 1978) (citing cases).

Accordingly, the Court finds that the ALJ's credibility determination as to Mrs. May's testimony is proper as a matter of law and is supported by substantial evidence.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings is granted, the Plaintiff's motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 10, 2014
           Rochester, New York